**TRUSTEES OF OHIO WESLEYAN UNIVERSITY, and 7 others v FULTON**
**(8 cases)**

Ohio Appeals, 2nd Dist, Montgomery Co

Nos 1224, 1225, 1226, 1227, 1228, 1229, 1230 & 1231. Decided Dec 17, 1934

Fred L. Rosemond, Columbus, and Pickrel, Schaeffer, Harshman & Young, Dayton, for plaintiffs in error.

John W. Bricker, Attorney General, Columbus, S. J. Kusworm, Dayton, D. W. Iddings, Dayton, and Estabrook, Finn & McKee, Dayton, for defendants in error.

SHERICK, J, (5th Dist) sitting by designation.

The Supreme Court of Ohio has not directly passed on this question.

There has been cited from both sides three cases decided by different Courts of Appeals in this state:

Anderson v Gray, 12 Abs, 161.

Cole v State ex, 14 Abs 464.

State v Weinberger, 44 Oh Ap, 264 (13 Abs 554).

Neither of these cases had the direct question before them, but each of the cases involve the same subject matter, and the principles of law announced are in point.

We have previously referred to 124 Oh St, supra, wherein the Supreme Court held that the superintendent of banks would have no right to bring the action to enforce the stockholders' double liability, except as he is authorized by statute.

Secs 710-75 and 710-94, GC, grant this right of action to the superintendent. The fact that the Supreme Court has held that the provisions of Article 13, §3, of the Ohio Constitution are self-executing, in and of itself does not enlarge or diminish the rights of the superintendent of banks. As heretofore stated, he has no right at all, except as granted by statute. This being true, his power is bounded by the statute. This at once leads to the construction of the statute granting the power. The last paragraph of §710-75, GC, reads as follows:

"At any time after taking possession of the bank for the purpose of liquidation when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities, he may enforce the individual liability of the stockholders."

This provision of the section not only authorizes the superintendent of banks to bring the action to enforce stockholders' liability, but designates that he may bring such action as soon as he ascertains that the assets will be insufficient to pay its debts and liabilities. The right of the superintendent of banks to enforce stockholders' liability only applies where he has taken charge of the property and business for the purpose of liquidation.

Syllabus 3, 124 Oh St, 375.

This court at all times has recognized that this fundamental question was of vital importance to the litigants and to others similarly situated throughout the State of Ohio. It has also recognized that the question presented was close. That because the legislature of Ohio in enacting §§710-75 and 710-94 GC did not follow the Federal Statutes on similar subjects or the New York Statute in its entirety, the Federal decisions and those from other states were only helpful inferentially. Upon all questions, save the one now under consideration, this court has been in substantial agreement at

all times and an opinion had long since been prepared covering all controverted questions. We were, however, in disagreement upon the main issue, a majority of the court being of the opinion that the action of the Superintendent in ascertaining that the bank was insolvent was a final action if within the bound of discretion. When the opinion of this court was about to be released, the case of **Baumgardner v State ex Fulton, 48 Oh Ap, 5 (16 Abs 671)**, was decided by the Court of Appeals for Lucas County, the court from the Third District sitting by designation. The second and third propositions of the syllabus in this case are determinative of our question. The second syllabus is as follows:

"2. Under the provisions of §710-75, GC, and cognate sections, the taking possession of the property and business of a bank by the Superintendent of Banks for the purpose of liquidation fixes the right of the Superintendent to proceed with the liquidation, and as incidental to such liquidation to ascertain whether the assets of the bank will be sufficient to pay its debts and liabilities, and to enforce the double liability of stockholders."

The third syllabus is as follows:

"3. Neither the bank nor its stockholders can contest the authority or discretion of the Superintendent of Banks to proceed with the liquidation and to ascertain the necessity of enforcing double liability and determining the amount thereof other than by the exclusive remedy provided in §710-100, GC."

After the Baumgardner case had been determined in the Court of Appeals, a motion to certify was filed in the Supreme Court of Ohio. Thereupon, we determined to hold the instant case until action was taken by the Supreme Court upon the Baumgardner case. To our surprise and much to our regret, the Supreme Court did not see fit to admit the Baumgardner case, although in the last year it has admitted and passed upon many cases involving questions arising under the liquidation of banks by the Superintendent of Banks of Ohio.

We appreciate that upon a technical consideration of the action of the Supreme Court in refusing to admit the Baumgardner case, there is no legal significance whatever. However, we are constrained to say that, in our judgment, there is an implication to be drawn from the action of the Supreme Court which we construe to be favorable to the determination of the Court of Appeals in the Baumgardner case. As a result of the refusal of the Supreme Court to certify the record in the Baumgardner case, the one member of this court whose opinion was at variance with the conclusion in the Baumgardner case has yielded his position and now joins the majority in following the law of the Baumgardner case. We therefore subscribe to and support the second and third propositions of the syllabi in Baumgardner v State, supra, in so far as consistent with the other questions herein determined.

The next question for determination is as to whether or not the trial court was warranted under the state of the record, in directing a verdict in favor of plaintiff as prayed for in the petition.

In our judgment, the averments of the second and third defense present an issue of abuse of discretion on the part of the Superintendent of Banks. This constitutes an affirmative defense and the burden of proof would be upon the defendants to establish it by a preponderance of the evidence. Many of the averments in each of these two defenses would not be pertinent to this issue, but after eliminating the immaterial parts thereof, there still remains sufficient to present the affirmative defense of abuse of discretion. In considering this question, attention is called to other portions of this opinion wherein is set forth the rights and powers of the Superintendent of Banks. On this issue, any evidence presented on the question of the solvency or insolvency of the Bank would only be admissible as it would bear upon the question of abuse of discretion.

When the defendants say that the Bank is and was solvent and able to pay all its obligations; that the Superintendent of Banks wrongfully, unreasonably, arbitrarily, unjustly, illegally and oppressively found to the contrary, if proven, would constitute a fraud and under such situation the prayer of the petition should be denied. By reason of the above, we think the court was in error in directing a verdict.

Another claimed ground of error was the refusal of the court to permit further amendment at bar. In substance it was sought to add to the averment charging the plaintiff with acting arbitrarily, unlawfully and illegally the word "willful" and also as "he well knew."

This request not being made until the case was being tried, was not timely and we do not think that the court committed any error in refusing such request. We doubt very much if the amendment would add anything to the pleading. As heretofore stated, it is our view that the answer in the second and third defenses does raise the issue of abuse of discretion and the added words will do no more.

As we understand counsel for plaintiff were seeking to bring their pleading within the express language of the case of **Chenault v Gray, decided by this court in January, 1933, and reported in Volume 13 Abs, page 600.** The editor, from the opinion, prepared the following syllabus:

"1. Any official act of the superintendent of banks which comes within the classification of quasi judicial functions cannot be challenged unless it be averred that he acted from willful, corrupt or malicious motive."

It should not be understood from anything the court stated in the Chenault case that it would be necessary to use this exact language in order to raise the issue of an abuse of discretion. As heretofore stated, the language used does raise this issue.

However, if defendants think differently and desire to save the question, we think the court could well permit the amendment, if the request was renewed promptly.

Other claimed ground of error was the court's refusal to set aside the trial assignment to a jury and first try the claimed equitable defenses set out in the second or third defense of the amended answers. In support of this claimed error it is urged that under the language of **Article 13, §3, of the Constitution,** wherein it is provided that stockholders are to be held "individually responsible, equally and ratably, and not one for another," an accounting must be had so as to determine the prorated share to be collected from each stockholder. This is on the theory that some stockholders may be insolvent and unless all pay equally, a 100% payment by these defendants might, in effect, be paying the obligation of other stockholders in part.

Attention is called to the allegations of the petition that the full 100% from all stockholders together with the assets of the bank will not be sufficient to pay the bank's liabilities in full.

The last paragraph of §710-75 GC, mere-ly stipulates as a condition precedent to the bringing of the action that the bank be insolvent. While the power given to the superintendent of banks to sue is controlled by statute, yet the section of the Code having practically the same language as **Article 13, §3, of the Constitution,** it must so far as possible be given such construction as would inure to an individual creditor under the self-executing provisions of the section of the Constitution. In other words, after the superintendent of banks establishes the right to sue, from thence forward the same construction will be given to the statute as though an individual creditor on behalf of himself and others, was bringing suit under the self-executing provisions of **Article 13, §3, of the Constitution.** The above is merely illustrative and not intended to be in conflict with **Fulton, Supt. v Wetzel, 47 Oh Ap, 72.** We accept the Wetzel case as good law.

The time at which the superintendent may bring suit to enforce the double liability is immediately following the ascertainment of insolvency. He is not required to wait until the assets are collected and distribution made to creditors. As we view it, this is the plain provision of the Code. The only limitation, either in the Code or under the Constitution, is that one stockholder can not be compelled to pay the obligations of another. If it should develop in the liquidation that the full 100% is not requisite to pay the liabilities of the bank, the superintendent of banks might be required to impound so much of the funds as would insure that no stockholder would be paying the obligation of another.

The claim of the creditors are paramount, and should be protected to the limit. The stockholders are the owners of the bank and they are charged under the law with knowledge of their double liability. To this extent they occupy the position of debtor and the depositors that of creditor. Courts should have care in promulgating a simple procedure which will guarantee to everyone their rights under the law.

For the reasons enumerated, the case will be remanded and a new trial ordered. Exceptions will be allowed to the defendants in error.

HORNBECK, PJ, BARNES and SHERICK, JJ, concur.